The next matter number 23-1125 United States v. Jose A. Vega-Figueroa. At this time would counsel for the appellant please introduce himself on the record to begin. Good morning. For the record, the court appointed attorney Frank and attorney Michael. I'm expecting to request two minutes for rebuttal. Yes. Thank you. First of all, the court should know and realize that at the age of 23 in the government's brief, the government conceded that the district court can only treat guideline 1B.1.13 policy statement as mandatory in its finding. So right off the bat, you have an error right there that's been conceded by the government. Now I'd like to point out that not only that, the court, the district court in its December 12, 2022 opinion and order failed to consider 3553A factors that have been provided to the court ever since February 2021 when the original motion for reduction of sentence based on the first effect was filed. There were a myriad of... Counselor, are you suggesting that the district court has to go one by one by one and specifically make findings that... Your Honor, based on the holistic theory expanded in your case law, and the other case law involving compassionate release, I understand, yes, the court had to follow a proper way of channeling that discretion. And that included the family issues. He has six children. The time in prison, he's been in prison for half of his life. He's been in prison for 27 years. Those 27 years make it a time served... If he was sentenced to 360 days, he would be time served at 306. He served 324 months as of April of this year. Now the judge, the court also should have considered the health situation that involved a myriad of complications, not only his diabetes, hyperthyroidism. I can give you... As a matter of fact, I filed a 27-J letter recently, three days ago, because I found it to be my obligation to give the court the latest situation regarding his knee, his left knee, which was infected when he was in court. Just before you go, Judge, I'll ask a question. I'm sorry, go ahead, Judge. About that letter you just filed, shouldn't that be... From your point of view, it's newly discovered evidence, and there's a federal rule, Federal Rule 33. Isn't that the proper evidence for presenting that to the district court? Your Honor, the district court knew of this. Let me make sure that you and the doctors know this. This case, the district court received 36 supplemental motions filed regarding my client's in addition to the COVID issue, in addition to the infection, the vulnerability by the CDC, in addition to all those other things, the court has received that. Now, this is something I have to absolutely realize. The prosecution, the government, never reacted to any of those 36 supplemental motions, and the judge, the district judge, never ruled on any of them. He just noted 36 motions. Your appeal is from something that the district court did rule on, correct? Yes, and in that, that's what we're reviewing, not the other motions. Your Honor, you're reviewing an opinion in order issued in December of 2022, after the court received a myriad of 35... The question is, in the ruling that we're reviewing, that was from a first step back motion that it ruled on, and the question is, did it fail to consider something in that ruling? Okay, and in that ruling, it refers to the health issues that were raised, and then says, on balance, given the 3553A factors, I'm determining, in light of the injuriousness, that I'm not going to grant the relief. Your Honor, I'm sorry. Is that wrong? No, that's wrong. The district court only considered two things, security, safety to the community, and his diabetes, period. That's the only two things that he considered. He didn't consider the travel costs to the community. If I may finish my question... You may not. Judge, help me, I have a question for you. Go ahead, I'm sorry. I'm looking at the opinion, page 7, and the judge says they have to submit extensive medical information before the request for compassionate release. Suffers from type 2 diabetes, hypertension, hypothyroidism, back pain, left knee arthritis, frequent headaches, aches, and a visual-electric-like muscle reaction. The judge is aware of everything. He's considering everything. Well, the thrust of the court's order is based on diabetes and on the issue of security. Now, my point is that in December, 11 days before the opinion and order, I filed a motion with three very important subjects. Trial testimony that showed that the snitch, the government's witness, cooperates in lying. Number two, it showed that the judge, the sentencing judge, made no reference to the elements of a crime of murder, for which he made a cross-reference of murder. My main point is that my client suffered double jeopardy. It was raised before the district court during trial. And the district court responded in the order by saying that, given the standard of review is different on sentencing, and it's appropriate if there's a preponderance to support it. So the argument that there was acquitted conduct isn't determinative of anything. Your Honor, with all due respect, I understand that the abuse of acquitted conduct was erroneous, and it is erroneous right now. And there is, on November 1st, as your Honor knows, there's an amendment that's going to go into effect. Now, I believe...  We have to go by the arguments you made in your file. In your brief, its headline didn't take account of the fact that there was an acquittal. That's right, of the same crime, murder, of a murderer. And in the opinion, the district court directly responds to the point that there was acquitted conduct, and says that's not responsive, because under the proponderance standard for sentencing, the conduct could still be relevant. So why doesn't that just show the particular argument you make in your brief? Your Honor... It just isn't true in light of what the district court did. My point is that for the court to make a murder-cross-reference, there has to be indirect elements of that crime. It's not just preponderance, your Honor. Double jeopardy is the crime. The crime of murder requires thinking prior, you know, thought. You have to... The sentencing judge, your Honor, never, never mentioned the elements of murder during the sentencing prologue. They were not included in the injury instructions, and they're not included in the indictment, your Honor. The crime of murder is not included in the indictment. Now, how can you penalize somebody, quote, in two life sentences? Two life sentences for a crime that... May I ask a question? Go ahead, your Honor, I'm sorry. Okay. Here's the heading in your brief of this issue. Did the district court err in failing to take judicial notice of the defendant appellant's acquittal in state court? All right, your Honor, I asked the district judge a myriad of times to give us a hearing. I asked him a myriad of times to take judicial notice of that acquittal in state court of the same murder, of the same two murders. In the district court's opinion, it acknowledges the acquittal and says, nonetheless, relative conduct can be considered under the content. Did you make an argument to us that there was no basis for finding by a preponderance? Yes, your Honor. Where do you make that in your brief? Well, I sent, your Honor, four days ago. Yeah, but that's not in the brief. It's not in the brief, but it's a truth, your Honor. My obligation as a counsel is to bring to the court the truth, and that's what I'm looking for, the truth. Okay, thank you. My time is up. Thank you, counsel. Next, would counsel for the United States please introduce herself on the record to begin? Good morning, your Honor. May it please the court. Jennifer Velez Perez of the United States. This case is an appeal of a denial of a motion. The opposite court will judge the district court's denial of a case. This is really a motion based on its determination that the 3553 factors were counseled against her. The district court did not have use of discretion in making this determination because the district court considered the majority of the 3553 factors. At first, it's another nature and circumstance of the offense that begets history and characteristics. It balances and recognizes efforts to remove rehabilitation against a former leader in a drug trafficking operation that was severe. As this court's opinion in Vega's direct appeal stated, the drug trafficking organization was extensive and had impeccable organization. Everything from the color of the packaging used for the drugs, to the preferred car models used in drive-by shootings, to the particular kinds of firearms permitted to carry in various situations were under Mr. Vega's control. The district court then considered the organization engaged in violent crimes under Mr. Vega's direction. The enterprise routinely carjacked vehicles and used them for drive-by shootings, targeted against violent drug dealers. And the district court also relied on the fact that there was evidence of the murder of violence, including two murderers at Oaxaca, a non-profit rehab facility. The district court then went on to look at the need for the sentence of both and particularly focused on the need to protect the public, finding that on balance, Vega was still a dangerous woman. Is that dangerousness to the community an appropriate factor in order to 3553A, or is it better couched under ruling under 3582? Well, Your Honor, in this court's recent opinion in DeAngelo, the court looked at that same question and decided that yes, the district court can look at whether or not the defendant is still dangerous to the community under the drug trafficking analysis. And so we find when we're asking the court, specifically in light of these recent rulings in DeAngelo and Ayala-Vazquez, where the district court's primary factor behind the determination is a finding of dangerousness, we're asking this court to affirm. Let me ask you, counsel, the district court will understand under 3553A or first effect, when you consider dangerousness, the court has discretion to give it more weight than other rehabilitative or other conditions, am I correct? That's correct, Your Honor. And in this particular case, you were just reciting why the court gave more weight to that. Yes, exactly. And this court has found no error in similar cases where the district court has done just that. I just cited those two recent opinions in DeAngelo and Ayala-Vazquez. Given that you agree the district court erred in terms of treating 131.13 as a finding, why shouldn't we revamp this down for the court to do its analysis? Well, this court has said that both wrongs are a disjunctive test, so it can affirm or deny on either wrong. And even though we're conceding error on the first part, the extraordinary compelling part of the analysis, we did not concede error on the first three factors. And this court can and has affirmed on that basis multiple times. Even where the government has conceded error, or where the courthouse found a rule of thumb error on the first part of the analysis. As I read the district court's opinion, there's no separate analysis of whether there's a by a preponderance of the evidence, a basis for applying the murder cross-reference. As I read it, it just rejects the argument that the couldn't, you can't consider that. How do you understand that? The district court did reject it, and also did reject it on the fact that yes, accreted conduct can be relied upon for purpose of sentencing. And it discusses multiple erases of where the sergeant has been raised and rejected. Did the defendant below to the district court argue that even if the accreted conduct could be considered for sentencing, there was not a sufficient basis for showing by a preponderance that the murder cross-reference applied? I don't believe he did in his first motion. And at various points in his other motions he has additional information but I don't think he makes that specific argument. No, he represents he's made it recently in a 28-J letter to us. What's the government's response to that? His argument all along has been that it wasn't charged, that it wasn't in the jury instructions, and the jury didn't find beyond a reasonable doubt that he had committed murder. So he cites the wrong standard all along the litigation because for the sentencing court, all they needed to do was find out the controversy evidence that the defendant had engaged in a convo that had resulted in the murder of the victim. In your defense, he never challenged the basis for being able to find that under that standard? He never challenged it under that standard. And throughout the history of this case, the trial of this case, it's not been long in the direct appeal of this court found that he had ordered and been responsible for at least two murders. Even though he had been acquitted, the witnesses that Mr. Vega talks about, Roberto Tuna, had been extensively brought to the stand during the jury trial. And so the district court could make a determination by a defendant. It was also in the one-armed unobjected PSR had the facts of the murders. Thank you. Thank you. Thank you. Counsel, at this time, counsel for the appellant, please reintroduce yourself back on the record. You have a two-minute rebuttal. For the court of attorney, I'm concerned for the defendant. Your honors, I call your attention to the Kiyos Morales opinion, 83-4-87 of the state, the D.C. The district court never undertook an evaluation of the 80 U.S. voters by 53 factors and remand life sentences of 360 months. I call the court's attention to the district court's opinion and order granting the release of Mr. Kiyos Morales. And I bring to your attention that I filed a motion requesting the court to take judicial notice of excerpts of that opinion and order by Judge Camille Benedict-Bebe, where she questions the government's testimony of their witness that was not truthful, which is entirely applicable, in my opinion, to this case also, because it's the same type of, the same witness, the same witness. And I brought to the court's attention that Judge Casillas never made reference to the crime of murder. He only said, based on, it's stated in, deaths took place, murders took place. But there's no specific reference to my client. And the issue is, you have a double jeopardy issue here, which I believe your honors can take control of and determine that jeopardy conduct is a violation to the Fifth Amendment's right to a jury trial. I think that's the core of this issue. And finally, my client, your honor, he's got six children. His 70-year-old mother is in court. He's got a son who will give him a house, work, transportation. He cannot walk. He hasn't been able to walk. He's walked with crutches since April 2008. All these things the court had before him, and it did not refer to any of them, OK? And I trust that the holistic view mentioned by Judge Celia in his opinions was never taken into consideration by the district court. And I think your honors can take into consideration all of these. I can give you citations of appendix, but my time's up. Thank you. Permission to withdraw. Thank you, counsel. That concludes argument in this case.